Morning, everyone. Welcome. We're ready to call our first case for the day and appreciate folks being here for this. I'll remind you that when you're at the podium, you're free to and ask you if you would take your mask off so that we can hear you a little better. So, we'll call Vitamin Energy v. Evanston Insurance Company. Mr. Shouf. I hope I said your name right. Shouf. Shouf. Sorry. I get it in a variety of ways. That's quite all right. Thank you. Good morning. My name is George Shouf. I'm appearing on behalf of Vitamin Energy. I'd like to reserve three minutes to rebuttal, if I may. May. It's done. Thank you, Your Honor. In granting Evanston's motion for judgment on the pleadings, the District Court committed two legal errors. Could you speak up a little bit? Maybe it's the plexiglass that prevents the sound from coming forward. I can. Thank you. In granting Evanston's motion for judgment on the pleadings, the District Court committed two legal errors. The first was it misconstrued the allegations in 5-Hour Energy's complaint against Vitamin Energy. The complaint alleged expressly that a Vitamin Energy ad created a false impression. Right. Yeah, we're familiar, and we've read paragraph 48 a few times over, and so we're tuned into this. But can you answer the assertion from the other side that what you're really trying to do is turn every claim of superiority into a disparagement claim? Well, I don't... Here we're talking about a quantitative... I understand and would understand the argument on the one hand. Why isn't just our product better for you? It's got more of the good stuff. Well, this is quantitative. Our product has more Vitamin B than their product. That's the perceived... As I understand it, that is what 5-Hour is alleging, and that's what they assert on the other hand. You are in the odd position of having to make your case by claiming that you really said rotten stuff about the other side. I'm sorry? I'm just thinking it's an interesting posture that you're in to make out that you get a disparagement coverage. You have to assert, yeah, we were disparaging them and not telling the truth about their product. It's an awful position to be in. It is. And it gets to sort of to the heart of the... Whether or not 5-Hour's complaint is a good one doesn't matter in the analysis. The analysis for this court is whether or not indeed the assertion that we have disparaged their products by claiming we have more Vitamin B than theirs in this advertisement implicates coverage and implicates a defense. They don't claim that it's false. They don't. They claim there's a false impression. Doesn't disparagement require allegations of actual falsity? I believe disparagement can stand with a misleading claim, for example, and certainly even... Really? I believe so. Is there case law to support that? Well, there is. In fact... Just what we pulled from, if I may, the U.S. Healthcare, the Blue Cross decision, this court's 898... That's not an insurance case. That's a commercial... Disparagement claim, right. But it says 5-Hour's complaint... I'm sorry. It defines disparagement, a commercial disparagement under Pennsylvania law as statements that attack the quality of another's goods, reducing the marketability of the goods. In other words... You're saying falsity is not an element of disparagement? I believe it's not. And in any event, likewise, there's a cause of action for false advertising under Lanham Act, which certainly doesn't require falsity. In that instance, for example, and this too would result in coverage, as I understand it, under the policy. In this circuit, the Third Circuit, the elements of a false advertising claim under the Lanham Act are that the defendant has made a false or misleading statement as to his products or another's, that there's actual deception or at least a tendency to deceive the substantial portion of the attendant audience. The deception is material and it is likely to influence purchasing decisions. But is that a disparagement claim? It's a false advertising claim, yes. Right. But we're... Your... The focus of your assertions seems to be coverage about disparagement. Right? Right. Okay. So let's focus on disparagement and that's a state law claim under Pennsylvania law, right? Correct. Are you arguing that anything other than the comparative chart constitutes a disparagement? And the statement, the allegation and the claim that there's a false impression, a misleading impression that that chart suggests... I understand that that's how you're characterizing the chart. I'm trying to ask whether there's any other factual circumstances. You point to anything other than the comparative chart to say, yeah, that's where we disparaged 5-Hour Energy. No. That is the predicate for the disparagement. Correct. And it's the vitamin B piece of it that's the disparagement? Yes, sir. So what's the answer to the district court's characterization of this as merely a statement about your own product? And that under Albion Energy, we understand it's an NPO and non-presidential, so we're not bound by it. But the assertion that maybe there's something implied about 5-Hour Energy by what you said about your own product, but that implicit disparagement is not actionable, or at least it wasn't under New Jersey law. Well, it seems to me the allegation that the ad creates this false impression is subject to three possibilities. It's that it may be suggesting, 5-Hour is perhaps suggesting, that we're saying ours has more, or they're saying, secondly, that we're incorrectly, the ad incorrectly suggests we have more and they have less, or we have less and they have more, or that they have more. So there's three possibilities. And under the liberal construction standard that we employ in the context of favorable inference on that point. How do you distinguish Albion? That we are specifically calling out, they say, and I should say 5-Hour specifically alleges that we have disparaged their products in the context of their vitamin B content, that we've misrepresented their vitamin B content. And Albion, there is no reference to the competitor's products. As I read the amended complaint, their insofar as it's talking about vitamin B, is paragraph 48. Do you agree with that? I do. Okay. If I may add another point to Judge Jordan's question, if you look at paragraph 46 of that complaint, you'll see where they make specific allegation with respect to the chart falsely suggesting that ours has too much. So clearly in paragraph 48, they're saying 5-Hour is that you're simply alleging too much, or that the advertisement alleges falsely that you don't have 100% when you allege you do. And I apologize. It's a struggle to keep this straight with... The comparative chart has a blank for 100% of the value of vitamin B. Now, is that a true or a false statement? This is going back to Judge Rendell's question. Is that a false statement? Yeah. Is it true or is it false? Here, I'm trying to figure out... Are you at least alleging that if we could infer that it's a false statement, that if we take every favorable inference in your behalf, that it's a false statement? Or is that part of your argument? We don't believe it's a false statement. We believe, however, that 5-Hour is alleging that it is. That it's alleging that it is? Yes. Yeah. Okay. With you. So, I mean, when you say, well, we just think a false impression is enough. Pennsylvania law, doesn't Pennsylvania law follow the restatement second and say, no, for disparagement, the very first element is a false claim? That's how I read it. As I understand it... As I understand commercial disparagement in Pennsylvania, it is enough that it be misleading, a false or misleading statement about another's product. Okay. But we're not talking about commercial disparagement under Pennsylvania law. We're talking about how Pennsylvania would construe the provision in the insurance policy that says disparagement. Disparagement. Correct. Correct. And I believe that incorporates the notion of disparagement in the commercial sense. I add the modifier commercial to... So what would happen here if we were to say that you're right, that this is a claim of falsity or at least misleading. There are all these exclusions. There's been nothing by the district court about these exclusions. So we would have to send it back in any event for them to look at that, would we not? Well, we've asked the court to indulge in addressing that issue directly. To indulge in something that we don't do. Make a... I believe it's a pure legal question, and I think the court can, in its discretion, because the briefing was completed at the district court level. The district court simply passed on the issue because it ruled instead that there was no advertising injury. So it didn't need to address the affirmative defenses. So we're a reviewing court. Aren't those exclusions really the application of the facts to the law? That's something different from what we do? Application of law to the facts, I should say. In the context of construing the insurance agreement, it's a pure legal question I think that the court can pass on in the first instance. It's a pure... Well, I'm struggling a little bit with that assertion because I think we have to have some sort of a sense, don't we, that it's crystal clear that 5-Hour Energy's complaint or your declaratory judgment complaint makes out a case or doesn't make out a case just on the basis of the complaint. When I read the mutual benefit versus Haver, I'm struck by the language that the court says that they were able to deal with the exclusion because it was crystal clear on the face of the complaint how things applied. Are you telling us it's crystal clear that right on the face of the complaint, it's crystal clear that these exclusions do not apply? To the contrary, Your Honor. It's clearly Evanston's burden to make out and establish the application of these exclusions. It's not ours. And our point is that they didn't offer any proof at all other than submitting a handful of these exclusions and say they apply. No real argument. Why doesn't that just make the case that Judge Rendell's asked about, which is there's not a developed record here? So maybe it works and maybe it doesn't. The fact that they didn't carry their burden of proof doesn't mean that you win on summary judgment. It means it's too early for summary judgment, doesn't it? Well, I do believe that this court could, on the record in front of it, resolve the exclusions. I think it's fairly clear, very clear, extremely clear that they simply don't apply to the facts at hand and that the court could, as a result, I think order on remand the district court or on remand instruct the district court to order summary judgment is what you're asking. This was judgment on the pleadings, was it not? It was judgment on the pleadings. So there's no evidentiary opportunity here? I'm not sure that there needs to be. I believe the... Well, but you're saying they didn't satisfy their burden. What burden do they have at the pleading stage? They have the burden of establishing the applicability exclusions. No, they just assert them in the pleadings. They don't have to establish anything. They cross moved on the pleadings with respect to their application. We cross moved back and they don't apply. And like I said, it's their burden. It is their obligation to establish the exclusions. We get the argument, Mr. Shofan. Thank you very much. We'll have you back on rebuttal. You'll have three minutes on that. Thank you very much. I remasked here, I assume? Yeah, that's the protocol. My glasses, my glasses. Thank you, Your Honor. Thanks. Well, I took a crack at Mr. Shofan and got it right, but Mr. DeFebo, did I get that right? That's exactly right, Your Honor. Michael DeFebo for Apelli Evanson Insurance Company. Do you mind if we start at the end and pick up on this question of exclusions? Absolutely. Can you tell us why the district court wasn't premature in talking about exclusions? I mean, isn't it the case that that Haber quote that I gave you means we just don't know? There's not a record here to know whether or not it's appropriate to say that the exclusions apply. Certainly, Your Honor. And the district court never reached the exclusions because Judge Slomski found in the first instance that there's no advertising injury, so he never needed to get there. He didn't deal with it, but you've dealt with it in your briefing. You've made argument about that. Correct. And I think to Judge Rendell's point that this court is a reviewing court, there are two things the court can do if it reaches the exclusions, which we don't think it needs to. As Your Honor's noted, you can return the case to the district court to make determinations of fact if any determinations of fact are necessary to be made. But the court can also affirm on any basis that's supported by the record. And the exclusions, the interpretation of the exclusions is a matter of law for the court. The interpretation of the allegations of the underlying complaint is a matter of law for the court. So the court could conclude, if it reaches the issue of the exclusions, it could conclude that those exclusions on their face apply to the allegations of the underlying complaint and that there's no duty to defend. It's also the law in Pennsylvania that the duty to defend is broader than the duty to indemnify. So if you find as a matter of law that there's no duty to defend based on the exclusions, then there's also no duty to indemnify. So you could affirm on that basis, you could remand for determination by the trial court. But I think Judge Rendell is correct that the one thing you can't do is to find judgment for the plaintiff in the first instance at this court. Well, if you say as a matter of law, we can find in your favor, we could certainly as a matter of law find that you're wrong and that the exclusions don't apply, couldn't we? I don't get the logic there. Your Honor, you could find that the exclusions don't apply to the allegations in the complaint. That may address the duty to defend. And as you've recognized with Mr. Shove, you don't need to get there because the underlying complaint does not allege disparagement. Well, let's back up there. You have alleged that the, or it has been alleged by 5-Hour Energy, that the chart contains, gives a false impression that vitamin energy has more vitamin B than 5-Hour Energy. Which means that it gives a false impression that 5-Hour Energy's product has less vitamin B. And they say it creates a false impression. If it creates a false impression, then it has to be false. Because if the impression is false, then the underlying assertion has to be wrong. Correct? So why does that not, given the standard, which is very lenient towards the insured, why does that mean you have a duty to defend? So, Your Honor, if we're backing up, I'd like to back up and address the actual allegation of the underlying complaint. And I think it's important, Mr. Shove said that their argument is based entirely on that chart that's reproduced on page 281 of the record. And paragraph 48. And paragraph 48. But I think it's important to take a look at what the underlying plaintiffs are actually alleging in those paragraphs that run from paragraph 40 through 48. And if we look at paragraph 40, that's the introduction of this section of their complaint. And 5-Hour Energy makes it very clear in that paragraph that what it's doing is, it is alleging that vitamin energy is making false statements as to its own product. And all of the allegations that follow, and the chart that Vitamin Energy is relying on here, are all just examples of 5-Hour Energy's claim that the falsity here, the falsity is with respect to the vitamin energy product. It is not with respect to the 5-Hour Energy product. Well, but if it is, if it's saying that 5-Hour Energy has less than vitamin energy, it is clearly saying something different from what was said in Albion. Saying, yo, you're saying we have less. And somebody's going to look at it and say, oh, I want my vitamin D. And you have more. So I'm going to buy that. Your Honor, the complaint actually doesn't make any allegation whatsoever about how much vitamin B or vitamin C the 5-Hour Energy product does. I'll read it to you right now. It says there is the false and or misleading impression that all the defendants have 1,000 milligrams of vitamin C and more vitamin B vitamins than plaintiff's products. That's a statement that, that's an assertion, a quantifiable assertion that they have more, you could measure it, and there's more, and 5-Hour Energy has less. That's what 5-Hour Energy says. And they say that's not true. They say that's false. They don't have more and we have less. Now, why isn't that just like straight up a false statement as alleged by the 5-Hour Energy people as to which your client's got an obligation to defend on a Pennsylvania disparagement claim? I'm sorry, Your Honor, if I could catch up with you. Which paragraph in the complaint did you read? I just read to you from 48. That's the money paragraph in the 5-Hour Energy complaint, right? Right. Okay. And I quoted to you from it. And it says, well, I'm not going to read it again. We've got limited time. I just read it to you and it says, 5-Hour Energy's assertion is they falsely claim they have more than we've got. That's a statement about us. It's a comparative statement, but it's not just a statement about them. It's a statement about us, that we have less and you could measure that, and that's just not true. So why isn't that a statement about 5-Hour Energy, which is, quote, false, unquote, according to 5-Hour Energy, as to which your client, bound by their insurance policy, would be required to defend the Vitamin Energy people? Where do you get the assertion that there's nothing said about the 5-Hour Energy people? Your Honor, paragraph 48, if we look closely at it, is alleging that Vitamin Energy is making a false statement about its own products and is attempting to dispel- I know that's your position, but I've just read it to you. So I'm trying to get you to engage. When you say I'm taller than you, doesn't that necessarily mean that you are shorter than I am? Yes, Your Honor. I mean, you're doing semantics here, but somebody has more, obviously. Their contention is it's not true. And so your assertion is somebody else has less. Your Honor, I think that goes to the point that you raised earlier in the argument, and that is, what is disparagement? And disparagement requires a statement that is false. Right? In paragraph 48- They allege it's false. Well, what they allege, Your Honor, is that defendants' representation is that its products contain certain quantifiable amounts of vitamin C. They don't just say that. That's the point. They don't just say that. They say that it is false and that it says it has more than plaintiff's products. That's not a statement just about them. It's a statement about five-hour energy. It is an assertion. And if you look at the chart, the chart is saying we don't have 1,000 milligrams. Hey, vitamin energy says we got 100 percent of the daily value of vitamin B read over. Five-hour energy doesn't have 100 percent. That's a statement about whether five-hour energy's got 100 percent or it doesn't have 100 percent, isn't it? Your Honor, I think the point here, though, is that five-hour energy, for whatever reasons, has not made any allegation in its complaint. That the statement regarding vitamin B or the statement regarding vitamin C is false. I just read it to you. It says it is intended to leave and does leave the false impression. And that, I don't know, if we're reading this in terms of every inference in favor of vitamin energy, doesn't that at least with every inference in their favor leave one saying? They're saying that you lied about your product and ours. I think what they're saying, Your Honor, is that you lied about your own product to create the false impression that it's better than our product. It's not saying one way or the other how much vitamin B is contained in the five-hour energy product. It does, and I guess we're just running around a circle here, but it certainly looks to me like it's saying you say you've got more and that's not true. I think what they're saying, Your Honor, is that you are falsely trying to create the impression that your own product, vitamin energy's own product, is superior. And again, this paragraph 48 is making the claim that vitamin energy falsely is trying to establish its product as superior to all other products in the market. If you look at the last two lines of this allegation, Your Honor, they're saying more than plaintiff's products and that defendant's products are superior to other products in the market, including plaintiff's products. And I suppose if somebody else had come in and sued, they'd be making the same assertions, but we're not worried about whether they're making broad superiority claims. We're dealing with the specific allegation from five-hour energy that they said something that was false and or misleading and was intended to leave a false and misleading impression. So if that's what we're dealing with, well, I think we might have beat that horse so I can't move. Let's move, if my colleagues will allow me, back over to the exclusions. Because the court, the district court, you're right, just didn't address it, but you're leaning on it. And if we were to disagree with you for sake of argument about whether this case was handled properly on the motion on the pleadings with respect to the disparagement claim, we would have to deal with your arguments on exclusion, right? Yes, sir. So getting to that, the intellectual property rights exclusion, that's an exclusion that's pinned to trademark rights, isn't it? Your Honor, I think that it's broader than trademark rights. It says piracy, unfair competition, infringement of copyright, trade dress, slogan, service mark, service mark, trademark, trade name, patent, trade secret, other intellectual property right. Right. That is not an exclusion that deals with disparagement, is it? You've listed a whole bunch of things, but disparagement isn't in there unless you're making the argument that unfair competition is an umbrella that covers it. I mean, to the extent that the vitamin energy is making the argument that five-hour energy is asserting a claim under the Lanham Act that is the equivalent of disparagement, I think that other intellectual property right is something that would be included in that. But I don't know that you need to go there, Your Honor, because there are two other exclusions that more directly address the disparagement component. So let's set intellectual property aside. You're talking about the trademark infringement? Actually, Your Honor, I'm talking about C5 and C11, and I think this goes directly to your point regarding paragraph 48, because if the court were to conclude that paragraph 48 could somehow be read to contain a false statement as to the five-hour energy product, then that falls squarely within the exclusion in C5, because C5 excludes from coverage any claim based upon or arising out of advertising injury. So if you find there's advertising injury arising out of a mistaken advertised price or, and this is the important part, incorrect description of any product, good, or operation. Is that really what that means, an incorrect description? That's exactly what this means, Your Honor. Incorrect description? That's a pretty broad view of an incorrect description, isn't it? Well, listen to that. That's exactly the point that Judge Jordan, I think, was making with me with respect to paragraph 48. Now, we don't think that paragraph 48 contained an allegation about an incorrect description of the five-hour energy product. But if the court were to conclude that it, given the inferences favorable to vitamin energy, that it could be construed as an incorrect description of five-hour energy's product, that falls squarely within C5. I think we need a little more understanding of what that's intended to mean in the insurance industry, because that makes the exceptions almost swallow the rule. Does that exclusion require knowing falsity? No, Your Honor. No? No. That's not the knowing exclusion. That's the incorrect description exclusion? That's correct, Your Honor. And C11 is- If that's true, then what is your response to Judge Rendell? Because what you're saying there is, we'll take care of you for dismarriagement as long as you don't say anything that's inaccurate, which just means we're not covering you for disparagement by definition. Because false is worse than inaccurate. If an intentional statement wouldn't be covered in the first instance, and that's what Paragraph 48 alleges, that these are intentional- Which is why I just asked you, does that require knowing falsity? And you just said no. So if you can completely, innocently misdescribe your product, and then that exclusion turns out to not apply because you're able to say, yeah. Well, again, I don't want to repeat myself. I understand how your reading of it doesn't swallow the rule and render your own profession of coverage to be a nullity and an illusory thing. But Your Honor, my time has expired. I wish you the answer. Yeah. I think simply, that's not the case that we have before us. Because here, everything in plain- You're arguing the point, right? You're saying, don't worry about it, because we've got an exclusion, and they've made a misdescription. And that means we don't have coverage. And that's why we're pressing you and saying, can that really be what that means? You're telling us as a matter of law, that's what that means. If that's what that means, then you promised them something, and you immediately took it back. Okay. You don't get it. It doesn't seem to make sense to me, Mr. DeFedro. Your Honor, I do understand your point. I'm just asking questions, not trying to make points, trying to really understand the position that you're taking. Because we dealt with the intellectual property exclusion. We're dealing with this one now. The knowing falsity exclusion, would you agree, at least on that exclusion, that there's some question about, did you know, were you reckless, et cetera, et cetera? That there's some factual development that might be needed there before a ruling of law got made? I think given the allegations of this specific complaint, that the court could find as a matter of law that that applied. Because this complaint is predicated entirely on intentional willful conduct. Okay. All right. Well, the positions are well briefed. We got you in. And thank you for your time today. Thank you, Your Honor. Appreciate it. Okay. Mr. Schultz, we'll have you rebuttal. I think you covered special points of your questions. I agree. If there's this swallowing of the rule, we run into the ambiguity. In the Jerry's Sports Center case, specifically in that instance, the insured gets the benefit of this. Let me ask you on disparagement. Is every false comparable advertising claim always disparagement? I don't believe it is. No, Your Honor. Why not? How could it not be? Well, because among other things, it has to, I think, be a, well... Because disparagement requires, among other things, as I understand it, that there be diminution in value of, for example, lost sales on behalf of the claimant. Let me answer it this way. I'm going to break the disparagement claim into different pieces. Is it possible for an advertisement to make false statements about its own product, but true statements about the other guy's product? Is that possible? As a matter of defamation law? Disparagement. Disparagement law? I don't believe so, no. Or it's not possible to do that? I don't think so. Or is it possible to make false statements about one's own product and not say anything about the other guy's product? I want to be careful here, because that doesn't present an issue where somebody may not allege disparagement nevertheless, and that's the world we're in, where there's an allegation of disparagement, regardless of the merits of the claim. So I want to be careful and sort of consider your questions carefully, because the statements you make suggest liability for disparagement as opposed to someone's ability to assert disparagement. Those are two different things. Let's say there are kids on a playground, and the one kid says, my dad is so strong and smart, he's the best dad on the block. Has he disparaged any other kid's dad? I don't believe so, no. Because again, in the law in Pennsylvania in particular, and bring it back to the commercial context, it has to be a reference to a disparaging comparison between products. And that's exactly what we have here that's exactly different from Albion. Why hasn't that kid necessarily disparaged every other kid's dad on the block? Because as I understand the law of disparagement, and again, we're talking about disparagement rather than an allegation of disparagement, you have to make reference to the other dad. Now, if you said, my dad's way better looking than your dad, I mean, perhaps. Perhaps you could make the allegation. I don't know that you could prove it out, because then you get to puffery and that sort of thing. Are there any additional questions? I just wanted to revisit a point that you raised. Again, we're in the duty to defend world, not the coverage world. And in the context of these allegations that knowledge, these knowledge exclusions somehow require further factual development, no. There's cases very specifically on point that where those issues are determined later, the duty to defend nevertheless attaches. We cited those in our brief. We got you. We understand, and we do appreciate the briefing that's been provided. We've got the case under advisement. Thank you very much. We'll try to get back to you promptly. Okay. Thank you, Your Honor. Thank you for your time. Thanks, Mr. Shove. Thanks.